UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| United States of America, | Crim. No. 10-339 (PJS/JJK) |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| (1) Noe Alamos Pantoja, | |
| Defendant. | |

---

Jeffrey S. Paulsen, Esq., Assistant United States Attorney, counsel for Plaintiff.

Barry V. Voss, Esq., Barry V. Voss, PA., counsel for Defendant.

---

JEFFREY J. KEYES, United States Magistrate Judge

This matter is before the Court on Defendant Noe Alamos Pantoja's Motion to Suppress the Contents of Any Intercepted Wire or Oral Communications and Derivative Evidence. (Doc. No. 88.) This Court held a hearing on the motion on February 25, 2011. Exhibits were received and admitted into evidence. The matter was referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and D. Minn. Loc. R. 72.1. For the reasons set forth below, this Court recommends that Defendant's motion be denied.

I.   **BACKGROUND**

During summer 2009 law enforcement began investigating Noe Alamos Pantoja and other individuals for their involvement in a drug-trafficking organization. (Gov't Ex. 1.) Detective Jeffrey Miller became involved in that

investigation as a member of the DEA task force. *(Id.)* Prior to the wiretap applications for Defendant Pantoja's telephone, Detective Miller worked with a number of confidential sources in the investigation of Defendant Pantoja and the Alamo drug trafficking organization. During that time, he also recorded and monitored phone calls using his confidential sources, had surveillance on Defendant Pantoja and other individuals, and had reliable confidential sources ("CS 1", "CS 2", and "CS3") providing information about Defendant Pantoja and other members of the drug trafficking organization. *(Id.)* Further, through his investigation, Detective Miller received "toll information" to get phone numbers in connection with the calls of the various members of the drug trafficking organization, including Defendant Pantoja, but was unable to identify the subscribers of many of those telephone numbers. *(Id.)*

On June 25, 2010, District Court Judge John R. Tunheim authorized wire interceptions over Defendant Pantoja's target telephone #1. (Gov't Ex. 1.) Then, on June 28, 2010, Chief District Court Judge Michael J. Davis signed an amended order authorizing both wire interceptions and electronic (text) messages interceptions on the same target phone. (Gov't Ex. 1A.) Finally, on July 23, 2010, Judge Tunheim signed an order authorizing continued interception of wire and electronic (text messaging) communications for target telephone #1. (Gov't Ex. 2.) Detective Miller provided affidavits underlying all three wiretap orders. (Gov't Exs. 1, 1A, and 2.) Ultimately, based on the information obtained from the wiretap authorizations, and through other search warrants, interviews

and evidence gathered in the case, the Government obtained indictments against Noe Alamos Pantoja and six other Defendants in January 2010. (Doc. Nos. 7, 62.)

## II.   ANALYSIS

Defendant Pantoja filed a Motion to Suppress the Contents of Any Intercepted Wire or Oral Communications and Derivative Evidence. (Doc. No. 88.) At the hearing, Defendant's counsel asked this Court to conduct a "four corners" review of the documents underlying the wiretaps, but identified no particular deficiency of the supporting affidavits in establishing the necessity element or probable cause required to issue the orders. Neither Defendant nor the Government requested post-hearing briefing on the issue. Exhibits were received and admitted into evidence.

Section 2518 of Title 18 of the United States Code sets forth the necessity requirement, noting that each application for interception of wire communication must include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). "The necessity requirement of 18 U.S.C. § 2518 ensures 'that wiretaps are not routinely employed as the initial step in an investigation.'" *United States v. Jackson,* 345 F.3d 638, 644 (8th Cir. 2003) (quoting *United States V. Thompson,* 210 F.3d 855, 858-59 (8th Cir. 2000), and *United States V. Maxwell,* 25 F.3d 1389, 1394 (8th Cir. 1994)).

The necessity requirement is met where other investigative tools reasonably appear to be unlikely to sufficiently expose the full extent of a conspiracy-in terms of members and in terms of scope or drug quantity-to obtain convictions against those conspirators. *See Maxwell,* 25 F.3d at 1394 (citing *United States v. Macklin,* 902 F.2d 1320, 1327 (8th Cir. 1990)); *see also United States v. Smith,* 909 F.2d 1164, 1166 (8th Cir. 1990) (concluding that necessity was established where the affidavit demonstrated that traditional procedures failed to expose the full extent of the conspiracy and all conspirators); *United States v. O'Connell,* 841 F.2d 1408, 1414-15 (8th Cir. 1988) (same).

Further, the information in the supporting affidavit must present a truthful showing of probable cause. *U.S. v. Falls,* 34 F.3d 674, 681 (8th Cir.1994) (citing *Franks v. Delaware,* 438 U.S. 154, 164-65 (1978)). Probable cause for the issuance of a wiretap is evaluated under the same standard as probable cause for the issuance of a search warrant. *See United States v. Fairchild,* 189 F.3d 769 (8th Cir.1999). "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." *United States v. Fladten,* 230 F.3d 1083, 1085 (8th Cir. 2000) (citing *Illinois* v. *Gates,* 462 U.S. 213, 236 (1983)). When determining whether probable cause exists, a court does not independently evaluate each piece of information, but, rather, considers all of the facts for their cumulative meaning. *United States v. Allen,*

297 F.3d 790, 794 (8th Cir. 2002). A defendant has the burden of showing that wiretap authority was unlawfully obtained or used. *Garcia,* 785 F.2d at 222.

### A. Probable Cause

Here, Detective Miller's 40-page wiretap affidavits extensively detailed target subjects, the basis of information, and the facts establishing probable cause. (Gov't Exs. 1, 1A, and 2.) The affidavits provided detailed information demonstrating that the described narcotics crimes were being committed by the named subjects; that the subject telephone was being used for the commission of those crimes; and that the wiretaps were likely to result in the interception of communications involving the criminal activity of Defendant Pantoja and others. (*Id.*) Thus, there was sufficient basis for the probable cause finding.

### B. Necessity

As for necessity of wiretaps, Detective Miller's affidavits amply explained how the use of confidential sources and undercover officers, physical surveillance, pen registers, toll record, search warrants, grand jury subpoenas, and trash searches had proven inadequate. (*Id.*) And Defendant has not pointed out a single deficiency in the application or made any argument at all that the necessity requirement was not fulfilled in this case. Further, the affidavits stated that the Government sought the wiretap authorization to obtain direct evidence that would convince a jury beyond a reasonable doubt of:

> [] The full scope, extent, and personnel involved in the narcotics trafficking conspiracy described in this affidavit;

5

> [] The identity and role of all suppliers of controlled substances to the known conspirators and their identified and unidentified co-conspirators;
>
> [] The identity and role of the main customers of the known and unknown narcotics traffickers;
>
> [] The management and disposition of proceeds generated by this organization's narcotics trafficking activity, and the government's right to seize and forfeit assets acquired with such illegally earned proceeds; [and]
>
> [] The identity of other persons involved in this organization[.]

*(Id.)*

In sum, the wiretap applications and affidavits here satisfied both the necessity requirement of 18 U.S.C. § 2518(1)(c) and (3)(c), and established probable cause as required by 18 U.S.C. § 2518(3)(b). Accordingly, Defendant Pantoja's motion to suppress should be denied.

### C. *Leon* Good-faith Exception

Even if probable cause did not exist, there were facially valid wiretap orders, and therefore the good-faith exception to the exclusionary rule, established in *United States v. Leon,* 468 U.S. 897 (1984), would have to be considered. The *Leon* good faith exception applies to wiretap authorization orders as well as to traditional search and seizure warrants. *United States v. Moore,* 41 F.3d 370, 376 (8th Cir. 1994). "Under the good-faith exception, evidence seized pursuant to a search warrant that lacked probable cause is admissible if the executing officer's good-faith reliance on the warrant is objectively reasonable." *United States v. Perry,* 531 F.3d 662, 665 (8th Cir.

6

2008). "The good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the [issuing judge's] authorization." *United States v. Proe/1,* 485 F.3d 427, 430 (8th Cir. 2007) (alteration in original) (quotations omitted). "When assessing the objective [reasonableness] of police officers executing a warrant, [the Court] must look to the totality of the circumstances, including any information known to the officers but not presented to the issuing judge." *Id.* at 431 (alteration in original) (quotations omitted). Here, this Court concludes that the good-faith exception would apply. There is no evidence that the issuing judges were intentionally or recklessly misled by the information provided in any of Detective Miller's supporting affidavits. Nor is there evidence to suggest that the officers' reliance on the wiretap orders was not in good faith, or that the officers' reliance was not reasonable. For these reasons, this Court concludes that the evidence seized as a result of the execution of the wiretap orders need not be suppressed.

## RECOMMENDATION

IT IS **HEREBY RECOMMENDED** that:

1. Defendant's Motion to Suppress the Contents of Any Intercepted Wire or Oral Communications and Derivative Evidence (Doc. No. 88), be **DENIED.**

Date: March 23, 2011

                                                    *s/ Jeffrey J. Keyes*
                                                    JEFFREY J. KEYES

                                                    United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **April 6, 2011,** a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within **fourteen** after service thereof.  All briefs filed under this rule shall be limited to 3500 words.  A judge shall make a de novo determination of those portions of the Report to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within ten days of receipt of the Report.